Argued January 24, affirmed as modified; costs to appellant, April 23, reconsideration denied June 5, petition for review denied June 13, 1979

In the Matter of the Marriage of
WARNER, *Respondent-Cross-Appellant,*
*and*
WARNER, *Appellant-Cross-Respondent.*
(No. 33258, CA 9660)

593 P2d 1236

Earl H. Mickelsen, Portland, argued the cause and filed the briefs for appellant-cross-respondent.

William C. Crothers, Jr., Salem, argued the cause and filed the brief for respondent-cross-appellant.

Before Schwab, Chief Judge, and Buttler and Joseph, Judges.

JOSEPH, J.

**JOSEPH, J.**

Wife appeals a decree of dissolution of marriage. Husband cross-appeals. The issues in dispute are the value of the marital assets, the share of the assets to be awarded wife and the amount of spousal support and attorneys fees, if any, to be granted her. Husband also argues that wife should pay for the transcript of a separate but related proceeding which he successfully moved to have added to the record on appeal.

The parties were married in November, 1966, when he was 35 years old and she was 30. The marriage lasted approximately 10 years. No children were born of the marriage, but she had seven by a previous marriage and he had four. The parties lived on a dairy farm, the major parcel of which was a 210-acre tract known as "the home place," which had been in his family for many years.

Husband had worked with his parents on the farm all his life. Several years prior to this marriage, he and his parents entered into a partnership agreement. Husband testified at that time he was deeded a one-half interest in "the home place."[1] Encumbrances on that property then totalled about $40,000. In about 1970, husband's parents curtailed their activities on the farm and began to collect Social Security. At about the same time, the elder Warners gave a deed to all of "the home place" to husband and wife as tenants by the entirety. Husband explained that the purpose of that transfer was to enable him to get a veteran's loan on the property. Subsequently, two additional parcels were purchased and added to the dairy operation. A 68-acre parcel (the Paola property) was purchased in late 1970 in the names of the elder Warners. That property was apparently purchased, at least in part, with the proceeds of the veteran's loan. In 1974, a 78-acre parcel (known as the Barackman property) was purchased on a contract for $51,000. It was taken

_____
[1] No other evidence of this purported conveyance was produced.

[757]

in the names of husband and wife as tenants by the entirety. After the addition of those properties, the farm income increased steadily until 1976.

The financial affairs of the partnership were loosely handled. Little or no effort was made to keep separate personal and partnership accounts or to distinguish between personal and partnership property. In a separate proceeding concluded just prior to this matter, it was ruled that wife was not a *de facto* member of the partnership.[2] She has not appealed that decision.

The disparity between husband's and wife's estimates of the net value of the marital assets is little short of astonishing. He claims that their net worth (including his interest in the partnership) was approximately $35,000. She claims that it was $194,000. Most of the evidence of the value of the dairy came directly or indirectly from husband; still, it was conflicting in many respects. The values he used when seeking loans at times prior to the parties' separation were much higher than those he offered in this proceeding. He admitted falsifying values on the loan applications. The trial court found him not credible and noted:

> "One gains the impression that his present claim
> of impecunity is motivated by a desire to escape any
> liability to his wife as a consequence of the marital
> relationship."

The trial court declined to place a specific dollar figure on the dairy business but concluded that it had some net value. Having reviewed the record, we conclude that the dairy (as distinct from the real property) has little, if any, net worth. The dairy did produce net income of $9,422 in 1972, $10,507 in 1973, $10,649 in 1974 and $17,154 in 1975. The evidence showed, however, that by the time of the trial, if not at the time of the separation, the dairy was in grave

---

[2] *See* n 3, *infra.*

financial trouble. Debts had ballooned and the dairy herd had shrunk. Both an accountant and a receiver who had been appointed in the related proceeding testified that the continued viability of the dairy was doubtful. Whether the financial condition of the farm was deliberately impaired by husband, as wife contends, we cannot determine.

■ The trial court concluded that "the home place" and the Barackman property were marital assets. We agree. Although those properties were used in the dairy operation, they were held separately by husband and wife, as was the Paola property by the elder Warners. Two estimates of the combined gross value of those properties ("the home place" and Barackman) were offered, one by husband, the other by a professional appraiser. The trial court accepted the professional appraisal of $316,000, and so do we. Substracting the encumbrances—about which the parties agree—the net value of the real property is approximately $124,000. That is the major marital asset.[3] In addition, there is personal property totalling about $4,050 and marital debts of $4,944. About those items there is no dispute.

■■ The trial court awarded to wife a total of approximately $30,500 (including $1,500 attorney's fees). In addition to her receiving personal property, $23,000 was to be payable in two years from the date of the decree, and husband was required to pay all of the family debts. No spousal support was decreed. Wife is trained as a secretary, but she worked outside the home only during the last couple years of the marriage. At the time of trial she was working part-time, earning a net salary of $313 per month.

---

[3] The separate proceeding adverted to above was initiated by his parents to dissolve the partnership with husband. Wife was named as a defendant. Parents and husband apparently resolved the dissolution, and only the affirmative issues pleaded by wife were tried. The court found that wife was not a partner. So far as the record discloses, no real property titles were affected in the termination of the partnership dissolution suit.

The trial court emphasized that

> "[w]hatever property rights now exist are derived from husband and his family. On the other hand, the wife brought nothing to the marriage."

That appears to be the explanation for the court's division of the assets. While it is true that the relative contributions of the parties may be a significant factor when the marriage is of short duration, *Nolan and Nolan,* 20 Or App 432, 532 P2d 35, *rev den* (1975), it is less significant in longer marriages and is never wholly controlling. *McNab and McNab,* 28 Or App 231, 558 P2d 1293 (1977). The marriage here lasted 10 years. During that period, the parties acquired the Barackman property and at least one-half of "the home place," the latter in some sort of rough exchange for the Paola parcel. Although husband attempted to prove that wife and her children made little contribution to the farm during that time, we are not persuaded. The trial court specifically found that her children did contribute. Wife could not reasonably have been expected to spend much time in the fields and barns. She had responsibility for a household with 11 children. Her contribution must not be ignored. ORS 107.105(1)(e); *see also Browning and Browning,* 28 Or App 563, 559 P2d 1314 (1977).

We conclude that the fact husband came into the marriage with a substantial interest in the family dairy is a factor to be considered, but that wife should have been awarded a greater portion of the assets. That is especially so in light of her immediate need for some supplement to her earnings. *Cf. Grove and Grove,* 280 Or 341, 571 P2d 477 (1977). The difficulty is how that should be accomplished.

We agree that husband should have the real property, subject to the encumbrances. Although the dairy appears to be doing poorly, we are reluctant to force husband to sell it. It has been in his family for many years, and it is the only business he knows. On the other hand, wife will not be able to support herself and

[760]

her children on her earnings until she has had time to sharpen her skills and prove herself in the job market. She needs help immediately. We therefore award her $325 per month as spousal support for four years, in addition to the personal property, the husband's responsibility for family debts awarded by the trial court and the $23,000 payable in two years after the mandate.

■   Wife contends that the award of attorney's fees was too low. On cross-appeal husband argues that there was not an adequate evidentiary basis for any award. We agree with husband. The sole witness called by wife on the issue of attorney's fees admitted that he had virtually no experience in the private practice of law. He had never had an office and had never tried a dissolution of marriage case. He was asked to assume that wife's attorney had spent a certain number of hours in various activities and if $4,500 would be a reasonable fee for those services. He was admittedly unable to confirm that the amount of time purportedly spent on the matter was reasonable or necessary. His testimony was not an adequate evidentiary basis for an award of attorney's fees, and that part of the original decree is stricken.

■   The only matter tried in the dissolution of partnership case was whether wife was a *de facto* member of the partnership. The parties stipulated that the facts developed at each trial would be included as part of the record in the other. Wife's designation of record on appeal, however, did not include the transcript and exhibits in the partnership proceeding. Husband moved in this court to have those added to the record, and the motion was granted. At argument, husband's attorney admitted that he moved to add those items to the record in order to preserve husband's right to *de novo* review on his cross-appeal. Of course, the addition also had the effect of making possible a complete *de novo* review on the wife's appeal. Nevertheless,

[761]

husband is the proper party to bear the cost of that transcript.

Affirmed as modified; costs to appellant.