Argued and submitted February 20,
affirmed as modified April 21, 1980

In the Matter of the Marriage of
FRISHKOFF,
*Respondent - Cross-Appellant,*
*and*
FRISHKOFF,
*Appellant - Cross-Respondent.*

(No. 78-3350, CA 14919)

610 P2d 831

Jeffrey Lake, Eugene, argued the cause for appellant - cross-respondent. With him on the brief was Lake and Neal, Eugene.

Stuart M. Brown, Eugene, argued the cause for respondent - cross-appellant. With him on the brief were Malcolm H. Scott, Eugene, and Young, Horn, Cass & Scott, Eugene.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

Husband appeals from those portions of a decree of dissolution of marriage concerning the amount and duration of spousal support payments and an award of a $100,000 lump sum payment to wife as part of the property distribution. Wife cross-appeals from the denial of attorney fees. We modify the amount of spousal support payments, but otherwise affirm.

The parties were married 8 1/2 years. They have two children, one of whom was a child of the wife's first marriage who was adopted by husband.

Wife is a part-time librarian in a local elementary school. Her net pay at the time of trial was $370 a month. She has a masters degree in library science plus some additional courses. Currently she is certified to be a librarian for all grades through high school but, by 1981, she will need her standard teaching certificate. Apparently, she will receive that upon completion of a course she is now taking.

Wife testified that she would like to obtain full time employment but that opportunities are limited. Her job is secure for the coming year but she expressed some concern about its future since her position depends on the yearly school budget. She also indicated that she would be qualified to teach high school English if she took three more courses but that jobs in that field are also limited.

At the time of the parties' marriage, wife was pursuing a master's degree in English. She claims to have dropped out at her husband's urging to stay home and be a housewife. Husband testified that she quit because she could not take a seminar she wanted. Shortly after leaving her studies they had a child. Some time later, wife resumed her schooling, part time, concentrating on library science.

Wife brought no assets to the marriage. Her education was obtained by assistance from her husband. She

concluded that, during the course of the marriage she contributed between $5,000 and $6,000 in earnings. At the time of trial, she had $870 in savings and $55 in a checking account, accumulated since the parties' separation. She also owned a horse, which a friend was in the process of selling for her. Her only other substantial possession was a 1977 Audi which cost $8,000 new. The house was in the husband's name.

Wife estimated her monthly expenses to be $1,326. She submitted the following:

| Household: | |
|---|---:|
| Cleaning and Supplies | 48.00 |
| Utilities | 110.00 |
| Mortgage | 150.00 |
| Taxes | 125.00 |
| Insurance | 50.00 |
| TOTAL HOUSEHOLD | $483.00 |
| Food | 275.00 |
| Medical | 26.00 |
| Clothes | 145.00 |
| Car | 112.00 |
| Educational | 25.00 |
| Professional | 56.00 |
| Entertainment | 105.00 |
| Miscellaneous | 155.00 |
| TOTAL | $1326.00 |

Wife admitted the household expenses were estimates because husband always paid them. Wife also indicated that the entertainment category and part of the miscellaneous was put in by someone in her attorney's office. She testified that, since the parties' separation she felt she was not living in the style to which she had been accustomed.

Husband is an associate professor of accounting at the University of Oregon. He testified that he expected his income for 1978 to be about $35,000. Previous years' adjusted gross incomes were: 1975 - $31,248; 1976 - $36,237; 1977 - $38,711. During the course of the marriage, he concluded that he earned about $150,000. His net pay[1] is about $1100 a month and he

---

[1] The apparent disparity between husband's salary and his estimated yearly income is due primarily to interest income, the amount of which varies.

estimated his expenses to be between $800 and $1100 a month.

Husband's assets consist of an $800 checking account and savings accounts totalling $250,000. He stated that these savings were mostly from gifts and inheritances acquired from the estate of his father, who died in 1965. He owns stock totalling $50,000. He also has an interest in various family partnerships acquired in 1964. They were identified as a New Jersey partnership (undeveloped land) and a New York partnership (an apartment building). He has a capital account of $10,000 in both, not accounting for appreciation and depreciation since acquisition. A third venture, a California partnership, owns nothing at the present time but, shortly before the trial of this case, had sold a parcel of land. Husband's share of the proceeds was $98,806. Husband testified that during the marriage he did not expend any energies on developing these assets or exercise control over them. He stated that the family lived off his salary and that he tapped these assets only infrequently.

During the marriage husband's funds were increased by a $3000 a year gift from his mother and, after separation, the proceeds from the California sale. He also acquired a partnership interest in a parcel of land in Bandon, Oregon. Husband has a retirement plan of $22,000, not cashable for at least 25 years, a $100,000 life insurance policy with no cash surrender value; and a $2,000 note receivable with interest.

Husband owns a 1979 automobile he paid cash for. He valued the family home at $105,000 with the outstanding mortgage being $15,000. (Wife valued it at $100,000.) The household furnishings were valued by him at $15,000, a piano at $5,000. (Wife did not know their worth.) The couple has no outstanding obligations.

Husband submitted the following evaluation:

| Family Partnerships | 1969 | Present |
|---|---|---|
| California | 36,000 | 0 |
| New York | 10,000 | 10,000 |
| New Jersey | 1,500 | 1,500 |
| Stocks | 101,437 | 50,000 |
| Cash | 81,094 | 260,000 |
| Automobiles | 4,000 | 12,000 |
| Retirement Program | 3,000 | 22,000 |
| Accounts Payable - Taxes | | (25,000) |
| Loan Receivable | | 2,000 |
| Bandon Property | | 10,000 |
| Furnishings | | 15,000 |
| Piano | | 5,000 |
| Home | | 90,000 |
| TOTAL | $237,031 | $452,500 |

Husband estimated, that during the course of the marriage, there was a $144,000 increase in his separate assets.

Husband testified that he was willing to let wife have the house until the children were grown, she moved or some other arrangement was made. He did not expect to receive a share of the home until that time. He expressed no interest in the household furnishings except for two paintings given to the parties by his mother. He indicated that, besides child support of $250 a month per child, he would be willing to give his wife a monthly sum for the house for the next year or two. He stated that he was willing to maintain his university medical insurance for the children, assumed wife would maintain dental insurance available through her job, and that he would assist in paying any uninsured medical-dental expenses. Finally, he stated that he was willing to give her a lump sum, about $10,000, for her reserve and attorney fees.

## COURT DECREE

The court decreed the following:

(1) Children - custody to mother, visitation rights to father; father to pay $250 per child per month for child support and can claim them as dependents on tax returns;

(2) $100,000 life insurance policy to be maintained by father with children as beneficiaries;

(3) Medical insurance maintained by father, dental by mother, the parties to equally divide all expenses not insured;

(4) Spousal support of $600 per month for five years;

(5) Father to maintain custodial bank accounts in trust for the children;

(6) Property:
- (a) Furnishings to wife except for paintings to husband;
- (b) Each party to keep his or her own car;
- (c) Husband awarded his interest in his retirement account, his interest in the Bandon property, all his stocks, family partnership interests and money in savings and checking accounts, and note receivable;
- (d) Wife awarded her accounts and to be paid $100,000 by husband as a property settlement;
- (e) The family home is to be owned as cotenants; wife may live there for 3 years and must maintain the expenses; at that time it will be sold and the proceeds shall be split, wife having the option during the 3 years to purchase it for $45,000 from husband; and

(7) Neither party is awarded costs or attorney fees.

## THE PROPERTY DIVISION

Husband's first assignment of error is that the trial court, by awarding wife a substantial portion of husband's pre-marital separate property, did not divide the marital and separate assets in a just and proper manner.

Husband claims that wife was awarded 50 percent of the marital estate plus 31 percent of his separate pre-marital assets. He outlines her award as follows:

| | |
|---|---:|
| 1977 Audi | 7,000.00 |
| Home furnishings | 13,500.00 |
| Piano | 5,000.00 |
| Share of home | 45,000.00 |
| | $70,500.00 |
| (Total Marital Assets - $144,000) | |
| From his separate assets | 100,000.00 |
| TOTAL | $170,500.00 |

The court in a dissolution proceeding is to make a division of property that is "just and proper in all the circumstances." ORS 107.105(1)(e). The relevant factors for consideration are:

"The financial condition of the parties; the nature and value of their respective properties; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health, and ability to labor; and the wife's age, health, station and ability to earn a living." *Nolan v. Nolan,* 20 Or App 432, 435, 532 P2d 35 (1975); quoting *Stettler v. Stettler,* 2 Or App 119, 121, 467 P2d 130 (1970).

Separately owned pre-marital property, as well as gifts and inheritances to one spouse during the course of the marriage, may be included in formulating a property division. *Dietz and Dietz,* 271 Or 445, 533 P2d 783 (1975); *Warner and Warner,* 39 Or App 755, 593 P2d 1236 (1979), *rev den,* 286 Or 637 (1979); *Pullen and Pullen,* 38 Or App 137, 589 P2d 1145 (1979), *rev den,* 286 Or 449 (1979); *Nolan and Nolan, supra.* While the source of the separate property is relevant and a factor to be considered in making a "just and proper" division, it is not the controlling factor. *Pullen and Pullen, supra,* 38 Or App, at 140; *Cook and Cook,* 29 Or App 171, 174, 562 P2d 601 (1977), *modified on other grounds,* 280 Or 589, 572 P2d 312 (1977).

We note at the outset that this is not a case where the marriage is of short duration, where neither party has foregone work opportunities to stay at home and be a housemaker, or where both parties' contributions to the marital assets are significant. *See Nolan and Nolan, supra,* 20 Or App, at 435 (4 years); *York and York,* 30 Or App 937, 939, 569 P2d 32 (1977) (2 years). In those cases the goal is to place "the parties as nearly as possible in the financial condition they would have" been in if there had been no marriage. *Id.,* at 939. Rather, our goal is to place "the parting spouses in the same economic position they would enjoy had there been no dissolution, insofar as circumstances and other equitable considerations permit," *Pullen and Pullen, supra,* 38 Or App, at 142; *Wirthlin and Wirthlin,* 19 Or App 256, 259, 527 P2d 147 (1974).

What is a "just and proper" division of property must be determined on a case by case basis. An examination of factually similar cases, however, is helpful in our determination.

In *Pullen and Pullen, supra,* the parties were married for eight years. They had two children, husband worked as an assistant bank manager earning $15,000 a year and wife, even though she had a college degree, had not been employed since the parties' marriage. In that case, the parties' income was supplemented by substantial gifts and loans from wife's parents. During the marriage, wife received securities from a trust established for her in 1959. At the time of trial, these assets were worth $338,000. The trial court allowed wife to retain these securities subject to a judgment of $48,000 in favor of the husband. This court affirmed the decree on appeal, noting that the wife's income had contributed to the couple's standard of living and that the source of the assets had obviously been considered given the substantial award to wife.

In *Warner and Warner, supra,* we awarded the wife a good part of the assets even though the husband came into the marriage already owning a substantial

interest in the family dairy. The marriage had lasted ten years, and wife took care of the home and the couple's eleven children (from previous marriages) while husband worked the farm.

In *Beers and Beers,* 31 Or App 1273, 572 P2d 364 (1977), this court affirmed the trial court's division of property awarding $100,000 to husband and $340,000 to wife. Most of the assets were, either directly or indirectly, a result of gift or inheritance from wife's family. We noted that the source of the assets was considered, that the trial court did not award all of the inherited assets to the wife but neither did it attempt to divide them equally. The award was, in this court's view, equitable and recognized husband's contribution to the marriage.

In *Cook and Cook, supra,* this court affirmed an award of separate trust assets to the husband with a judgment against them to wife. The couple in that case were married for 11 years.

Finally, in *Mauser and Mauser,* 28 Or App 525, 559 P2d 1310 (1977), this court approved a property settlement even though wife received only $102,000 and husband received $500,000. In response to wife's appeal, we noted that the seven year marriage was relatively short, and that the wife did not bring substantial assets to the marriage as husband did.

In this case, husband does not challenge the award to wife of 50 percent of the marital assets. He only challenges the $100,000 award. It is clear from the above cases that wife is entitled to some of husband's separate assets. The difficult question is: how much?

Although our review is de novo and we are required to "exercise independent judgment based on our own review of the record, our role is not to substitute our preferences for those of the lower court." *Pullen and Pullen, supra,* 38 Or App, at 142. This court will not modify a property division "unless we are convinced that we can make a significantly preferable disposition" to that the trial court made. *Ibid.*

From our own review of the record, we determine that the award in this case was as follows:

| Family Partnerships | Wife | Husband |
|---|---|---|
| California | | 0 |
| New York | | 10,000 |
| New Jersey | | 10,000 |
| Stocks | | 50,000 |
| Cash (Accounts) | 100,000 | 160,000 |
| Automobiles | 6,000 | 6,000 |
| Retirement | | 22,000 |
| Loan Receivable | | 2,000 |
| Bandon property | | 10,000 |
| Furnishings | 13,500 | 1,500 (paintings) |
| Piano | 5,000 | |
| House ($105,000 minus $15,000) | 45,000 | 45,000 |
| Tax obligation | | (-25,000) |
| TOTAL | $169,500 | $291,000 |

Husband retained possession of his assets. He received $122,000 more than wife in value. The trial court's division reflects a consideration of the source of the parties' assets, the needs of the parties and the standard of living to which they had been accustomed, as well as wife's contribution as both a homemaker and wage-earner. We decline to modify it.

## SPOUSAL SUPPORT

Husband's second and third assignments of error relate to the duration and amount of spousal support payments. He was ordered to pay $600 a month for five years.

In making support awards, the general standard is that payments should be "in an amount and for a period of time that would be just and equitable considering the factors set out in ORS 107.105(1)(c)." *Kilpatrick and Kilpatrick,* 38 Or App 159, 163, 589 P2d 1153 (1979). Those factors are:

"(A)  The duration of the marriage;

"(B)  The ages of the parties;

"(C)  Their health and conditions;

"(D)  Their work experience and earning capacities;

[1043]

"(E)   Their financial conditions, resources and property rights;

"(F)   The provisions of the decree relating to custody of the minor children of the parties;

"(G)   The ages, health and dependency conditions of the children of the parties, or either of them;

"(H)   The need for maintenance, retraining or eduction to enable the spouse to become employable at suitable work or to enable the spouse to pursue career objectives; and

"(I)   Such other matters as the court shall deem relevant." ORS 107.105(1)(c).

In *Kitson and Kitson,* 17 Or App 648, 655-657, 523 P2d 575 (1974), this court stated that:

"While each case must be decided on its own facts and no formula can be stated, certain principles emerge from an examination of the above cases. The most significant factor usually is whether the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during the marriage. The wife's employability includes consideration of her education, training, experience, age, health, capacity, whether she has custody of small children, etc. Length of the marriage is germane because the longer the marriage, the more likely it is that the wife has foregone employment experiences, the absence of which will make it more difficult for her to achieve employment and self-sufficiency. If the wife is employable at an income not overly disproportionate from the standard of living she enjoyed during marriage, then, generally speaking, if support is appropriate it should be for a limited period of, for example, one to three years."

The parties in this case are both still relatively young: the wife was 33 years old at the time of trial and the husband was 38 years old. Both are in good health. The wife has an advanced degree and is capable of earning a substantial living. Currently she is employed part time and, by her own testimony, desires full time employment. Wife does have custody of the parties' two children but both are in school full time and at an age where their needs should not unduly interfere with her working.

[1044]

Under these circumstances we feel that the length of support is inappropriate. Wife is employable at an income "not overly disproportionate" to the standard she enjoyed during the marriage. She may not be able to maintain precisely the same living standard she enjoyed during marriage, but such usually is not possible. *Grove and Grove,* 280 Or 341, 350, 571 P2d 477 (1977); *Miller and Miller,* 21 Or App 253, 534 P2d 512 (1975).

We conclude that the length of support should be limited to two years. This will allow wife time to readjust and to prepare herself for employment. *Grove and Grove, supra,* at 349. This should allow her ample time in which to complete the work needed to obtain her standard certificate as a librarian or, if she chooses, to take the remaining courses she needs to teach high school English. It will also provide her with the chance to seek full time employment.

The amount of the support payments are likewise inappropriate. Spousal support payments are not to be viewed in isolation but must be considered in light of the other provisions of the dissolution decree, especially the property division and child support. *Grove and Grove, supra,* at 344; *see also Sellers and Sellers,* 39 Or App 647, 650, 593 P2d 1191 (1979), *modified* 41 Or App 13, 593 P2d 1191 (1979).

Here wife will be receiving a $100,000 cash award as property settlement from husband. Husband is also required to pay $500 a month in child support. While it is true that he has substantial assets, $1100 a month is too heavy a burden: it is approximately equal to his monthly University salary, which is his principal source of income.

Wife testified that her monthly expenses are $1326. She brings home $370 a month in earnings and will be receiving $500 each month for the children. We conclude that monthly payments of $350 will be sufficient to meet her needs. While this adds up to less than her full estimated need, we note that she herself testified

that part of the estimate of her expenses has been included in the estimate by someone other than herself. Moreover, $350 is approximately the same amount husband was paying pursuant to the temporary court order for household expenses and is an amount to which he expressed agreement at trial.

The trial court's decree is modified to provide for support payments of $350 a month for 24 months.

## ATTORNEY FEES

Wife cross-appeals from the denial of attorney fees and costs. ORS 107.105(1)(h) gives trial courts the power to award attorney fees in dissolution proceedings. This court has held that the allowance of attorney fees and costs is a matter within the discretion of the trial court. *Wirthlin and Wirthlin, supra,* at 259. Here the assets awarded to wife included $100,000 in cash. We have concluded that this was a "just and proper" division of the assets. Under these circumstances we find no abuse of discretion in requiring the wife to pay her own costs and attorney fees.

Affirmed as modified. Costs to neither party.