Argued and submitted October 29, 2004, affirmed on appeal and cross-appeal July 6, petition for review denied November 1, 2005 (339 Or 475)

In the Matter of the Marriage of

Judee Fehsenfeld WINKLER,
nka Judith Louise Fehsenfeld,
*Respondent - Cross-Appellant,*

*and*

Eric David WINKLER,
*Appellant - Cross-Respondent.*

DO 001050; A119651

115 P3d 948

J. Michael Alexander argued the cause for appellant - cross-respondent. With him on the briefs was Swanson, Lathen, Alexander & McCann, PC.

Robert T. Scherzer argued the cause and filed the briefs for respondent - cross-appellant.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Husband appeals from a judgment of dissolution of marriage and assigns error to the trial court's property division. Wife cross-appeals from the dissolution judgment and a supplemental judgment denying her request for attorney fees. On *de novo* review, ORS 19.415(3),[1] we affirm on the appeal and cross-appeal.

Both husband and wife come from wealthy families, which provided each of them with sufficient assets that neither was required to work, nor will either be required to work, in order to support themselves or their children.[2] The parties met in Indiana and were married there in 1986. Husband worked as a computer programmer for the family business. Husband conceded that, during the time the parties lived in Indiana, wife maintained their home. Husband began law school in Arizona in the fall of 1988. During the spring of husband's first year of law school, wife became pregnant with their second child. Until that time wife had been the homemaker.[3] During that pregnancy, wife developed a serious medical condition that required her to remain flat on her back or risk losing the child. The parties hired a young neighbor to help wife. Since that time, the parties have regularly employed someone to help raise their three children.

The parties moved to Oregon in 1991. They bought a 99-acre parcel of property that had what wife described as a converted barn. Although husband furnished the proceeds to purchase the property, the property was jointly owned. The parties intended to remodel and enlarge the 4,000 square foot

---

[1] "We apply the current version of the statute in this case because the Supreme Court has implied that, in the context of a domestic relations case, the 2003 amendments to ORS 19.415(3), *see* Or Laws 2003, ch 576, §§ 88, 90a, did not affect the court's *de novo* standard of review. *See Kunze and Kunze*, 337 Or 122, 124, 92 P3d 100 (2004) (applying the 2003 amendments)."

*Dennis and Dennis*, 199 Or App 90, 110 P3d 607 (2005).

[2] As husband candidly testified:

"Neither one of us served as a breadwinner. Everything was in accounts. We received the money—most of the investments were in municipal bonds. We got the interest off it. There wasn't—and [wife], from her point of view, was sitting back and receiving money from her trust."

[3] In addition to the parties' first child, wife also raised a child from a prior marriage.

house to an 8,500 square foot bed and breakfast. Both parties were involved with the remodeling, which took 18 months to complete. Instead of using the house as a bed and breakfast, the parties decided to use the property as their home. They purchased an adjacent 57-acre parcel. Husband furnished the money to purchase the 57 acres, but the property was owned by a limited liability company in which husband held 51 shares and wife held 49 shares.

Husband and wife then decided to use the acreage as a vineyard. Although it was wife's idea, husband agreed. The parties decided to start with three acres and planned to increase the vineyard, three acres at a time, to 21 acres. At the time of trial 15 acres were planted. A friend taught wife how to drive a tractor. Wife described her role in managing the vineyard:

> "I ordered the grapes * * *. So we had to plow the soil, disk it up, get lime on it, get it ready, so [husband] actually did quite a bit of that, we both did. The first three years we spent preparing the soil and doing the planting. We were both involved in that. I drove to Eugene, picked up the plants. I ordered the plants. I made sure all the stakes were there, the lime was there. I ordered the lime from the truck to come. So I did the managerial part of that. [Husband] and I both did the labor on that."

Both husband and wife participated in the vineyard project for the first three years of its existence, but thereafter, as the vineyard increased in size and even after the parties separated in 2000, wife managed the vineyard by herself. Later she hired and supervised a manager and other laborers for the vineyard. After the vineyard began to produce grapes, wife processed the grapes and sold bottled wine. Wife rented out the dome house on the vineyard property in order to help pay the expenses of the vineyard. A few years later, wife arranged for the placement of a manufactured home on the vineyard property that she then rented out to provide additional income for the vineyard. With regard to the rentals, she advertised, arranged for lease agreements, and collected the rents from their tenants.

In addition to those responsibilities, wife's domestic duties continued after the parties moved to Oregon. Although

wife had domestic help, she hired, trained, and supervised the domestic workers. To some degree, both parties shared the duties of parenting while in Oregon. For her part, wife scheduled medical and dental appointments, did the laundry, supervised the household nanny, cooked family dinners, shopped for food, got the children out of bed in the morning, bathed them, and fed them before the nanny arrived. Wife testified:

> "I guess what I would like to say is that the ultimate responsibility of the family has always been mine. * * * [Husband] could choose to help or choose not to, whereas the ultimate responsibility of whether they were fed and when they got up and went to school and did their thing was mine."

Husband used his personal assets to pay for the family's living expenses. He gave wife $1,000 per month from which she was expected to pay for one-half of the food, one-third of the children's clothing, and all of her personal expenses.[4] The parties used husband's funds and did not use money that wife received from her various family trusts to pay for the family's living expenses. Instead, the parties agreed that the money that wife received from her trusts was for her to use as she pleased.

When the parties separated in 2000, husband remained in the home and wanted to retain the home and vineyard for himself. Wife lived in an apartment in Wilsonville and intended to purchase a home in the area. At the time of the dissolution, the value of the home, the vineyard, and the joint personal property, after subtracting any debts, was $1,008,406. The parties agreed to joint legal custody of their three children.

The primary dispute concerns the division of property. In order to put that dispute in context, it is appropriate to describe the property that the parties own.

Husband owns two bank accounts, the US Bancorp account and the Bank One account. Husband owned both accounts prior to the marriage and kept them in his sole name. In addition, at the time of trial, husband had already

---

[4] Near the beginning of the marriage, husband gave wife $100,000 to spend as she chose. That sum has been spent over the course of the marriage.

received $500,000 as an inheritance from his aunt's estate and was expecting to receive an additional amount in the near future. At the time of trial, the US Bancorp account was valued at $2,335,372, the Bank One account was valued at $1,940,562, and the trial court determined that husband would inherit an additional $1.5 million from his aunt's estate. Wife did not claim any interest in either the Bank One account or the expected inheritance.

Wife owns a 1973 Cessna airplane that husband purchased for her. The plane is valued at $65,000 and husband agrees that wife should be awarded the plane. Wife's other assets are easy to describe but hard to value. Wife is the beneficiary of four family trusts known as the Fehsenfeld Trusts. The evidence at trial did not establish the total value of the Fehsenfeld Trusts, but husband argued that the value of wife's beneficial interest in the Fehsenfeld Trusts exceeds the value of his assets. The evidence established that wife has no right to income, principal, loans, or the remainder from any trust. The trustees had absolute discretion to determine the amount, if any, of annual distributions to wife from the trusts. The annual distributions wife received increased:

| Time Period | Annual Distribution |
| --- | --- |
| Before 1995 | $10,000 |
| 1995 & 1996 | $15,000 |
| 1997, 1998, & 1999 | $25,000 |
| 2000 | $40,000 |
| 2001 | $55,000 |

A consultant recommended increasing the annual distribution to $75,000[5] and recommended a distribution of $1 million, after taxes, to each beneficiary in four equal payments when the beneficiary reaches ages 45, 50, 55, and 60.

---

[5] Wife's counsel at oral argument stated that wife expected to receive annual trust account payments of $75,000, which is consistent with the consultant's report.

At trial, husband contended that the home and vineyard are his sole property and wife should not have any interest in those properties because he paid for those assets. He also argued that wife was not a homemaker and that he has rebutted any presumption of equal contribution. In addition, husband contended that both the US Bancorp and Bank One accounts are his sole property, and that the expected inheritance from his aunt's estate is his sole property because there was no donative intent to award the inheritance to wife. Husband does not claim any interest in wife's beneficial interest in the Fehsenfeld Trusts.

Wife asserted, however, that the home and vineyard are marital assets and that she should be awarded one-half of their net value. Wife also contended that she is entitled to one-half of the US Bancorp account because that account was used to pay family expenses and it has become a marital asset or, at least, it was commingled to such an extent that it became a marital asset. Wife does not assert any interest in either the Bank One account or husband's expected inheritance from his aunt's estate.

The trial court concluded that wife was a homemaker during the marriage. Further, the trial court concluded that the home and vineyard were marital assets and that wife should be awarded one-half of their net value—that is, $504,203. The trial court also concluded that the US Bancorp account was husband's separate property because:

> "there was no donative intent to [w]ife for the assets of this account. Wife did not contribute at all to the acquisition of the account. Husband has not allowed [w]ife access to the account, nor has she had anything to say about the composition of the assets in the account."

Finally, the court distributed the Bank One account, the Fehsenfeld Trusts, the expected inheritance, and the Cessna airplane, and the parties' remaining property in accordance with the parties' agreement.

Based on that distribution, husband would have almost $3 million in assets, while wife, after paying outstanding debts and her attorney fees, would have assets of approximately $320,000 plus her airplane. The trial court, after considering that wife "will have little funds to invest if she

purchases a modest home," determined that it would be just and proper for husband to pay an additional $800,000 from his separate assets so that wife's lifestyle will be less affected. Thus, the total equalizing judgment against husband was $1,304,203. The trial court denied wife's request for attorney fees.

On appeal, husband assigns error to the trial court's conclusion that the home and vineyard were marital assets subject to equal distribution. He also assigns error to the award of $800,000 to wife from his separate assets.

■ We first consider the trial court's decision to treat the home and vineyard as marital assets. ORS 107.105(1) (2001), *amended by* Oregon Laws 2003, chapter 576, section 109, governs our analysis. It provides, in part:

"Whenever the court grants a decree of * * * dissolution * * *, it may further decree as follows:

"* * * * *

"(f) For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be *just and proper* in all the circumstances. * * * The court *shall* consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

(Emphasis added.) The parties agree that the home and vineyard were acquired during the marriage; therefore, they are marital assets to which the presumption of equal contribution applies.

■ Husband, nevertheless, asserts that he rebutted that presumption. In *Kunze and Kunze*, 337 Or 122, 134, 92 P3d 100 (2004), the court described the importance of the presumption of equal contribution:

"That statutory presumption embodies a legislative intent to recognize that, absent evidence to the contrary, each spouse's efforts during a marriage equally contribute to, and are made for the benefit of, the marital estate, regardless of the nature of those efforts or how the property is

held. \* \* \* To effectuate that intent, the presumption directs the court, that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of marital assets."

(Citations omitted.) The *Kunze* court further explained:

"If a party seeks to overcome that presumption, then that party has the burden of proving by a preponderance of the evidence that the other spouse's efforts during the marriage did not contribute equally to the acquisition of the disputed marital asset. In assessing whether a party has satisfied that burden, ORS 107.105(1)(f) requires the court to consider both economic and noneconomic spousal contributions, including the contributions of a spouse as a homemaker."

*Id.* (citations omitted).

According to husband, because wife was not a homemaker for purposes of ORS 107.105(1)(f), the homemaker's contribution does not apply to the acquisition of the home and vineyard. For that reason, husband asserts that he has rebutted the presumption of equal contribution. In *Massee and Massee*, 328 Or 195, 202, 970 P2d 1203 (1999), the court defined the word "homemaker," in ORS 107.105(1)(f), consistently with its ordinary dictionary meaning:

" 'one that makes a home: one whose occupation is household and family management—usu. used of a wife and mother as distinguished from a paid housekeeper.' *Webster's Third New Int'l Dictionary*, 1083 (unabridged ed 1993)."

Husband concedes that wife was a homemaker in Indiana and Arizona. He contends, however, that wife ceased to be a homemaker when the parties moved to Oregon because they hired various individuals to help them maintain and run their household, however, wife strongly disagrees with husband's contention.

In this case, we need not resolve whether wife continued her role as a homemaker because, assuming without deciding that husband established that wife was not a homemaker in Oregon, husband has not rebutted the presumption of equal contribution based on wife's noneconomic contributions to the management of their home and the vineyard.

Those significant contributions were set out in some detail above and will not be repeated. *See* 200 Or App at 526-28.

However, even if we are incorrect that husband did not rebut the presumption of equal contribution, we would reach the same result because ORS 107.105(1)(f) requires that we make a just and proper division of the parties' assets. There are times when, despite the rebuttal of the presumption of equal contribution, equitable considerations require us to include the pertinent property in the property division. One such equitable consideration is the commingling of funds. *Van Horn and Van Horn*, 185 Or App 88, 93, 57 P3d 921 (2002), *rev den*, 335 Or 267 (2003) ("[O]ther equitable considerations, such as commingling of funds, may support an equal division of property even though the presumption of equal contribution has been overcome[.]"); *see also Seefeld and Seefeld*, 294 Or 345, 350-51, 657 P2d 201 (1982); *Jenks and Jenks*, 294 Or 236, 243, 656 P2d 286 (1982). In both cases, the court determined that equity required equal division of the property where the parties worked on the family home together and raised their children in the family home.

■ In *Kunze,* the court explained the rationale of those decisions:

> "[I]n deciding whether the court should include a separately acquired asset in the property division because of commingling, the court's inquiry properly focuses upon whether a spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate. * * * We caution, however, that acts of commingling do not mandate in all cases the inclusion of separately acquired property in the property division. Instead, the court must evaluate the extent to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership and also evaluate whether any inequity would result from the award of that asset to that spouse as separate property."

337 Or at 142. In determining the spouse's intent with regard to the pertinent property, we can consider multiple factors, including "(1) whether the disputed property was jointly or separately held; (2) whether the parties shared control over

the disputed property; and (3) the degree of reliance upon the disputed property as a joint asset." *Id.* at 141.

In this case, as we have already explained, we assume that husband established that wife was not a home-maker. Further, as husband correctly asserts, wife did not contribute financially to the acquisition of the home and vineyard. Nevertheless, there is ample evidence that those properties were commingled into the joint assets of "the marital partnership." *Id.* at 146. Husband and wife jointly held the home and vineyard. They shared control of both, worked together remodeling and enlarging their home, and worked together in the vineyard.[6] The parties raised their children in the home and treated the properties as joint assets, and wife relied on that understanding. There is no evidence that husband ever treated the properties as his separate assets. Under the circumstances of this case, equity requires that the home and vineyard be included in the property division. We conclude not only that husband did not rebut the presumption of equal contribution, but also that the commingling of the home and vineyard required that those assets be treated as joint assets of the marital partnership. The trial court did not err in awarding wife one-half the net value of the home and vineyard.

Husband also assigns error to the trial court's award of an additional $800,000 to the equalizing judgment. In her cross-appeal, wife assigns error to the trial court's refusal to award her one-half of husband's US Bancorp account, valued at $2,335,372. Because the two assignments are interrelated, we address them together. We first consider wife's assignment that the trial court should have included the US Bancorp account in the marital estate.

Wife argues, in essence, that husband integrated the US Bancorp account into the common financial affairs of the marital partnership through commingling. Further, the US Bancorp account "was *the* financial affair of the marriage." She continues: "The stock account was used to purchase the family home, the adjacent vineyard and used to pay all

---

[6] There is evidence in the record that husband did some of the physical labor in the vineyard even though wife performed the majority of the physical labor performed by the parties.

monthly expenses, and many vacations." Consequently, she argues, she should be entitled to one-half of the value of the US Bancorp account.

The trial court rejected wife's argument:

> "There was no donative intent to [w]ife for the assets of this account. Wife did not contribute at all to the acquisition of the account. Husband has not allowed [w]ife access to the account. Of the assets in the account, there is approximately $600,000 in untaxed gain, but the overall value of the account is less now than at the inception of the marriage. I find that this account is the separate property of [h]usband."

We agree with the trial court's conclusion.[7] Generally, husband demonstrated his intent to keep this property his separate asset. Husband limited wife's interest in the account to her monthly allowance of $1,000. The parties agreed that out of this monthly allowance wife was required to pay her share of the grocery bills and a portion of the clothes she purchased for the children. It appears that the parties agreed to keep much of their finances separate. There is no evidence that husband intended the account to be a joint marital asset.

Husband's intent to keep the US Bancorp account separate is also demonstrated by a comparison with the home and vineyard. We have previously held that the home and vineyard were part of the marital partnership. That was based, in part, on evidence of husband's intent. For example, even though husband furnished the proceeds to purchase both the home and vineyard, the properties were held jointly with wife. The parties shared control of the home and vineyard. Both parties performed physical labor on the properties. By contrast, the US Bancorp account was acquired before the marriage. Husband never added wife as a joint owner. We agree with the trial court that wife failed to establish that the US Bancorp account was commingled into the marital partnership so that that account was a joint marital asset.

---

[7] We note that the trial court's findings contain one minor error. For a short period of time wife had access to the US Bancorp account and paid bills out of that account. This error does not change our conclusion that the US Bancorp account is husband's separate property.

The more difficult question is whether wife is entitled to an additional $800,000 in the equalizing judgment. We note that ORS 107.105(1)(f) requires us to consider the social and financial objectives of dissolution, including the economic self-sufficiency of the parties. *Kunze*, 337 Or at 136. Moreover, in *Kunze*, the court stated:

> "The trial court's ultimate determination as to what property division is 'just and proper in all the circumstances' is a matter of discretion. This court will not disturb that discretionary determination unless it concludes that the trial court misapplied the statutory and equitable considerations that ORS 107.105(1)(f) requires."

337 Or at 136; *see also Bidwell and Bidwell*, 170 Or App 239, 242, 12 P3d 76 (2000), *adh'd to on recons*, 172 Or App 292, 18 P3d 465, *rev den*, 332 Or 305 (2001) ("We will not modify the trial court's property division, however, unless we are convinced that we can make a significantly preferable disposition.").

With that in mind, we turn to the trial court's ruling:

> "When [w]ife pays her debts and her attorney, she will have approximately $320,000 plus her airplane as her only substantial assets. Husband, on the other hand, will have the two accounts, the recent inheritance of $2,000,000 and his share of the marital assets, totaling nearly $1,000,000. Clearly, he leaves this marriage well able to care for himself and his lifestyle will not be affected. Wife, on the other hand, will have little funds to invest if she purchases a modest home. It is therefore just and proper that [h]usband pay to [w]ife $800,000 from his separate assets."

The court ordered that husband pay the equalizing judgment as follows: (1) $300,000 within three months; (2) $500,000 within six months; and (3) $504,203 within nine months.

In making its determination, the trial court considered all assets available to husband. Specifically, the trial court included husband's separate assets: (1) the US Bancorp account; (2) the Bank One account; and (3) husband's expected inheritance. However, in determining the assets available to wife the trial court did not expressly consider wife's interest in the Fehsenfeld Trusts. Presumably, the trial court did not include the Fehsenheld Trusts because it

previously concluded: "It is impossible to predict the income [w]ife will receive from the trusts."

Husband argues that the trial court failed to satisfactorily consider the established history of wife's annual payments from the Fehsenfeld Trusts. Husband concedes that wife's access to any money from the trusts is at the absolute discretion of the trustees. However, he argues, "[r]egardless of whether these trust[ ] assets were directly reachable by the trial court, the value in such trusts, admitted to be a minimum of $8 million, can and should be taken into account in the diversion of assets."

In considering that issue we note an error in the trial court's statement of the assets available to wife. The trial court stated that the only *substantial* assets available to wife are her airplane and $320,000, her share of the home and vineyard after payment of her debts. Wife's interest in the Fehsenfeld Trusts is a *substantial* asset, even though it is not possible to determine its exact value.

Historically we know that wife's annual trust payments from 2000 to 2002 increased from $40,000 to $75,000.[8] We know that the 2002 payment coincides with the distribution committee's recommendation pertaining to the trusts. We find that wife will receive annual payments of $75,000 and that the amount will be periodically adjusted for inflation, as the distribution committee recommended. Husband also wants us to find that wife will receive a payment of $1 million, after taxes, as recommended by the trust's consultant. We cannot make that finding because it is too speculative and not consistent with case law. *See Jones and Jones*, 158 Or App 41, 49, 973 P2d 361, *adh'd to on recons*, 159 Or App 377, 981 P2d 338, *rev den*, 328 Or 666 (1999) (reasoning that a court in a dissolution proceeding may not directly control the disposition of proceeds from a trust where the disposition is at the discretion of the trustees, particularly when the trustees are not parties to the dissolution and there are other beneficiaries). The trial court erred in not taking into consideration wife's interests in the Fehsenfeld

---

[8] As previously indicated, wife's attorney, at oral argument, stated that wife expects to receive annual payments of $75,000 from the trusts.

Trusts and, more specifically, erred in not taking into consideration wife's annual payments, now at $75,000, when it determined the size of the equalizing judgment.

Even taking those payments into consideration, it is clear that husband will have substantially more assets than wife. As the trial court pointed out, after wife pays her debts, she will have enough money from the value of half the marital home and vineyard to buy herself a "modest home." Wife will also have $75,000 per year from her trusts. Husband will own two properties with a net value of almost $1 million. His other assets will have a total value of approximately $5 million.

In *Frishkoff and Frishkoff*, 45 Or App 1033, 1041, 610 P2d 831 (1980), the court said of the property distribution in that case:

> "We note at the outset that this is not a case where the marriage is of short duration, where neither party has foregone work opportunities to stay at home and be a housemaker, or where both parties' contributions to the marital assets are significant. In those cases the goal is to place 'the parties as nearly as possible in the financial position they would have' been in if there had been no marriage. Rather, our goal is to place 'the parting spouses in the same economic position they would enjoy had there been no dissolution, insofar as circumstances and other equitable considerations permit,' *Pullen and Pullen*, 38 Or App [137,] 142[, 589 P2d 1145 (1979)]."

(Some citations omitted.) In *Frishkoff*, the husband had brought substantial assets to the marriage through various family inheritances. The husband worked and used his assets to pay for the family's living expenses. The wife stayed at home with the children for part of the marriage and worked for part of the marriage as well, although her economic contributions over the course of the marriage were substantially less than the husband's. The trial court granted wife $100,000 from husband's assets, and this court affirmed, noting that the trial court's ruling "reflect[ed] a consideration of the source of the parties' assets, the needs of the parties and the standard of living to which they had been accustomed, as well as wife's contribution as both a homemaker and wage-earner." *Frishkoff*, 45 Or App at 1043.

This is also a marriage of substantial duration, over 15 years at the time the petition for dissolution was filed. The parties became accustomed to a particular standard of living and the agreed upon practice during the marriage was for husband to pay for the marital living expenses out of his assets. Additionally, neither party worked and both parties relied almost entirely on husband's assets for their standard of living. Consequently, as in *Frishkoff*, part of our goal should be to place "the parting spouses in the same economic position they would enjoy had there been no dissolution, insofar as circumstances and other equitable considerations permit[.]" *Id.* at 1041; *Pullen*, 38 Or App at 142.

In ordering husband to pay an additional $800,000 as a part of the equalizing judgment, the trial court was required to consider all of the parties' assets, each of their contributions to the marriage, their economic circumstances during the marriage, and their economic circumstances after the marriage. ORS 107.105(1)(f) requires the court to order a property division that is just and proper in all of the circumstances. Although the trial court erred in not considering wife's annual trust payments, we cannot say that the trial court's division of marital property was not just and proper in all the circumstances. We affirm the trial court's determination that husband should pay an additional $800,000 in the equalizing judgment.

In her cross-appeal, wife also assigns error to the trial court's refusal to order husband to pay wife her attorney fees. ORS 107.105(1)(I) grants the trial court discretion to award attorney fees.

In denying the request for attorney fees, the trial court found:

> "This case was tried efficiently by both attorneys. The case was complicated by the fact that substantial evidence was located in the state of Indiana concerning [wife's] family and trusts for her benefit. [Husband] did not controvert the basic allegations made by [wife's] attorney concerning fees or their reasonableness. There are, however, no extraordinary facts here that justify an award of fees to [wife.]"

Wife argues that husband should have to pay her attorney fees because his assets are substantially more than hers. We conclude that the trial court did not abuse its discretion.

Affirmed on appeal and cross-appeal.