Argued and submitted August 22, 1980 affirmed March 2, 1981

In the Matter of the Marriage of

KENNEDY,

*Appellant,*
*and*

KENNEDY,

*Respondent.*

(No. 78-9-239, CA 16242)

625 P2d 654

Clifford N. Carlsen, Jr., Portland, argued the cause for appellant. With him on the brief were Miller, Anderson, Nash, Yerke & Wiener, Portland, Lewelling & Harris, and Asa L. Lewelling, Salem.

Lawrence N. Brown and J. Michael Alexander, Salem, argued the cause for respondent. With them on the brief was Brown, Burt, Swanson & Lathen, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

THORNTON, J.

## THORNTON, J.

Husband appeals from a decree of dissolution, contending that the trial court erred in the following particulars:

1) awarding the income from husband's one-half seller's interest in the sale of the Green Villa farm in satisfaction of a $673,000 payment to wife ordered as part of the property division;

2) using an inappropriate method of calculating the "fair cash value" of the Green Villa interest;

3) requiring that husband assign his interest in the Green Villa contract as security for payment of the property division award to wife;

4) failing to properly take tax consequences of the decreed payout into account;

5) requiring that husband pay spousal support; and

6) requiring that husband pay $25,000 in attorney fees to wife.

The parties were married 29 years; at the time of trial, husband was 49 years old and wife was 50. Husband had worked exclusively as a farmer and operates the 352 acre Riverside Farm on which he raises grass seed and vegetables. Wife has a college degree and taught school from 1949 until 1975 when she quit, apparently at husband's suggestion, for the purpose of reducing the household taxable income. At that time, her interest in the school district retirement fund was withdrawn in order to pay the parties' taxes. Her teaching certificate has lapsed but could be revalidated by returning to school for a term. Husband testified he has back problems which restrict his mobility and capacity to perform certain tasks. It does not appear, however, that his disability is very restrictive inasmuch as most of the physical chores are performed by his employes. Wife is in excellent health. The parties have no children.

During the course of the marriage, the parties accumulated a substantial amount of real and personal property. He was awarded the Riverside Farm, which he

has operated for many years. The value of this farm was the subject of much of the evidence offered at trial. It appears to have a value of approximately $1,000,000, which includes fixtures, irrigation equipment and timber,[1] and is subject to a mortgage of $360,000. Husband received other assets, the values of which were not disputed: farm equipment ($150,000); other real property ($22,000); canning company retainages ($110,000); stocks, bank accounts, commodity accounts and life insurance policies ($186,000); and household furniture ($12,000). All told, husband's assets are worth approximately $1,120,000. Wife received the family residence ($226,000 less a mortgage of $124,000),[2] her jewelry and antiques ($42,000),[3] and a judgment of $18,000, representing one-half the commodity accounts, or a total of $184,000.

The dispute in this case centers around the receipts from the Green Villa Farm land sale contract, a farm of several thousand acres formerly held in partnership by husband and another individual. On January 19, 1977, the partners sold the property and dissolved the partnership. The sales price was $6,200,000. As of January 1, 1980, a balance of $5.4 million remained, which accrues interest at the rate of 6 percent per annum on the unpaid balance and which is payable in annual amounts of $500,000, with a balloon payment of $2,000,000 due in 1990. The balance after that is scheduled to be paid off in 1992. The property is encumbered by several partnership obligations totaling

---

[1] There was a dispute over the value of this asset. Husband's expert testified based on a market value approach that its value was $850,000. This did not include standing timber nor certain irrigation equipment which was not attached to the ground. Wife's expert estimated that it was worth $1,063,000, based on a combination of the market, cost and capitalization of income approaches, which included the timber and irrigation equipment. If the timber and equipment were added to husband's estimate, it would total $933,000 (a $130,000 discrepancy). We adopt a figure of $1,000,000. There is no contention by husband that the asset was misvalued and the figure is appropriate for our discussion on this appeal. Husband does contend that an operating loan of $76,000 should be deducted from the value of the farm, but husband testified that this loan was secured and offset by accounts receivable which were not otherwise accounted for in the trial court's apparent calculations. We therefore deduct only the $360,000 mortgage.

[2] This figure represents the mean value of the parties' estimates.

[3] This figure represents wife's estimate of value. Husband had no personal knowledge of the actual worth of the jewelry and antiques and wife's evidence was clearly more persuasive.

$2,807,200, the chief of which is a mortgage held by Prudential Insurance Company in the amount of $2,620,000. This obligation is payable out of the annual contract installments at the rate of about $300,000 per year until 1990 when a final payment of about $2,000,000 is due, corresponding to the balloon payment due under the contract. The remaining obligations will be discharged by 1982. Against his share of the receipts, husband has a $30,000 obligation from purchase of a combine to be paid by 1981. Allowing for these deductions, the parties agreed on a schedule of the net payments to husband from the contract which is reproduced in the margin.[4]

The Green Villa contract also provided for transfer to husband of the right to plant 60 acres of the 100 acre allotment of Penncross grass seed to which Green Villa Farms was entitled as a member of the Penncross Bentgrass Association, a farming cooperative. This type of grass is apparently a lucrative crop. Although there was no direct evidence of the value of the right to plant 60 acres of the grass, wife testified that husband had spoken in terms of $200,000 as the value of the crop, which would be harvested over a four-year period.

The trial court awarded the interest in the Green Villa contract to husband for the reason that an award to wife would result in a taxable transfer of property and husband would have to immediately recognize capital gains on the entire contract. To offset this award, the trial court awarded wife $673,000 at 10 percent interest on the unpaid balance, compounded annually. This award is secured by

---

[4]

"Net Payment on Husband's Share of Green Villa Contract

| "1980 | $ 46,000 * | 1987 | $ 121,300 |
|------|-----------|------|-----------|
| 1981 | 53,000 * | 1988 | 123,800 |
| 1982 | 57,400 | 1989 | 126,400 |
| 1983 | 108,500 | 1990 | 166,400 |
| 1984 | 113,700 | 1991 | 248,000 |
| 1985 | 116,200 | 1992 | 162,600 |
| 1986 | 118,700 | | |

"*NOTE:  Husband's share of obligations for tractor payments, irrigation equipment and survey ($30,821) should be deducted from these payments."

husband's Green Villa contract rights. The yearly payments are to equal the net amounts husband receives from the annual contract payable after the partnership obligations have been deducted. These payments are to run for eight years, 1980 to 1987. On January 15, 1988, the entire balance of the award and accrued interest is due. In the event husband defaults on any payment, the unpaid sum becomes enforceable as a judgment against husband. The court ordered husband to execute an assignment in escrow of his contract right and to notify the escrow agent of the award and instruct payment to wife accordingly. Husband was directed to deposit the balance of principal and interest due on January 15, 1988, with the escrow agent. If he does not, wife is entitled to receive the assignment of the contract interest and sell it at private sale after obtaining at least three bids. Excess received from the sale beyond what wife is owed is to be turned over to husband.

The trial court ordered husband to pay $1,500 per month spousal support for five years and $1,000 per month for an additional five years. Husband was also required to pay $25,000 toward wife's attorney fees.

Although husband's assignments of error call into question the values assigned to several assets, his brief states:

> "It is not the monetary asset division that principally concerns husband, but rather the procedure for paying the award. * * *"

Husband's basic contention is that he is currently in a tight cash flow situation and the decree, which requires immediate payment of spousal support, wife's attorney fees, and continued payment of taxes (including capital gains tax on the yearly contract payments), places impossible burdens on his finances.

We now consider, in a somewhat different order, husband's assignments of error.

### THE "FAIR CASH VALUE" OF THE GREEN VILLA FARM CONTRACT

■ The trial court awarded wife $673,000 to balance the otherwise unequal award of property ($1,120,000 to husband, $184,000 to wife). It appears that the court

arrived at $673,000 by taking the gross amount under the Green Villa contract ($5,400,000), adding the six percent interest specified in the contract and discounting it over the 12-year payout period at a 10 percent rate. This yields a figure of $4,276,870, of which husband owns one-half or $2,137,935. From this amount, one-half of the total encumbrances on the farm must be deducted ($1,464,500), yielding $673,000.

Husband's initial contention is that the "reduction to present value" method employed in estimating the value of the contract is inappropriate. His brief states:

> "The assets involved in this case should be valued as they exist, not on some speculative value that might be arrived at between a seller and an investor in a commercial setting. * * *"

Husband offered no alternate evidence of the value of the asset "as it exists." Although wife's estimate may not be completely accurate, it was the only satisfactory evidence available, and we accept it.

## ASSIGNMENT OF INTEREST IN GREEN VILLA CONTRACT AS SECURITY

Husband contends that the assignment to escrow of his legal right in the contract violates ORS 68.420(2), which prohibits assignment of a right in specific partnership property.[5] In this case, however, the seller's interest in the Green Villa contract is the only partnership asset and therefore represents husband's entire partnership interest which may be assigned under ORS 68.440(1).[6] The obvious

---

[5] ORS 68.420(2):

"The incidents of this [partnership] tenancy are such that:

" * * * * *

"(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property.

"(c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. * * *

"* * * * *"

[6] ORS 68.440(1):

"A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the

purpose of the former statute is to prevent creditors of one partner from attaching property held in common with other partners and thereby disrupting the conduct of partnership business. The assignment of husband's interest in escrow in this case causes no difficulty to the partnership, which is in the process of winding up its affairs, and does not affect the interest of husband's sole partner in any way. There may be, as husband contends, ways other than assignment of securing wife's payments, but we see no reason to alter the trial court scheme, which appears to achieve the desired result and protect both parties without undue hardship to either.

## TAX CONSEQUENCES OF DIVORCE DECREE

■ The tax consequences to both spouses of the property division and support awards in a particular decree are proper factors in fashioning those provisions. *Whitcomb and Whitcomb,* 39 Or App 763, 765-66, 593 P2d 1239, 40 Or App 583, 595 P2d 846, *rev den* 286 Or 745 (1979). Where a party contends on appeal that such consequences were not properly taken into account by the trial court, our review, albeit *de novo,* is limited by the extent of the record below and the general rule that we will not alter the terms of a decree unless we are convinced that our modification will be a substantial improvement. *Craig and Craig,* 30 Or App 419, 423, 567 P2d 141 (1977). In *Kathrens and Kathrens,* 47 Or App 823, 830, 615 P2d 1079, *rev den* 290 Or 211 (1980), we held that we could not adjust the property division for the tax consequences to husband of the sale of assets necessary to discharge wife's judgment where there was no evidence of which assets, if any, would be sold. Consequently, a party who is concerned about the tax impacts of a decree should establish with some particularity at trial what the tax consequences of a particular distribution would be.

---

absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled."

■ The decree of the trial court in this case took stock of at least two tax consequences: (a) husband was awarded his partnership interest in the land sale contract in order to avoid his having to recognize capital gain on his entire share of the Green Villa asset, and (b) the payout to wife was scheduled over less than ten years to avoid the inference under IRC (26 USC) § 71 that the installments were in fact "periodic payments" in discharge of husband's marital obligation which would make the payments taxable to wife. Husband contends that other tax consequences impose a significant burden on him and points out that, in 1980, on the Green Villa contract alone, he will receive interest income of $162,000 (one-half of 6 percent on $5,400,000), and another $23,000 in taxable income attributable to capital gain.

Husband fails to account, as wife suggests, for the significant tax benefits stemming from the contract. He will receive by wife's calculations,[7] a deduction in excess of $120,000 from the payment of interest on the Prudential mortgage alone. Interest will be deducted by husband on the other contract obligations, including the payment to wife.[8] It may be that other cognizable tax consequences may ensue from operation of husband's farm or disposition of other assets to satisfy husband's obligations under the decree, but, as will be discussed more fully below, there is insufficient evidence of the steps necessary to permit the reckoning of the tax consequences thereof.

## CASH FLOW PROBLEMS

■ Husband's principal contention is that the provisions of the decree create a severe cash flow problem,

---

[7] Wife calculates as follows: (a) by testimony, the total obligation to Prudential is $2,600,000, which will reduce to "about 2 million" by 1990; (b) annual payments to Prudential from the $500,000 gross payment is $300,000; (c) therefore, of the $3,000,000 in payments to be made between now and 1990, $2,400,000 will be interest (deducting reduction of principal from ($600,000) total payments); (d) which produces an average of $240,000 per year as an interest deduction (26 USC § 163(a)) to which husband is entitled to one-half. This deduction will be highest in 1980 and decline as the principal is eroded.

[8] By analysis similar to that set forth in footnote 7, *supra,* wife shows that husband will be entitled to $47,000 per year in interest deduction for payments made to wife. It thus appears that any taxable income from the Green Villa payment will be offset by interest deductions.

particularly during the first three years.[9] Our review of the evidence leads us to conclude that husband has failed to establish the cash flow problem.

Husband sought to show by introduction of his 1978 tax return and the testimony of his accountant as to the financial trend of the first six months of 1979 that Riverside Farm has been a losing venture in recent years. The tax return showed a net loss from farming of about $70,000 in 1978 which, coupled with business income from other sources, left an adjusted gross income of minus $23,500. This loss, according to the testimony, continued into 1979.

First, the fact that the farm may have lost money during one year does not clearly establish it as a losing venture. The loss in the first half of 1979 may well reflect only the fact that no crops had been harvested at that point. The conclusion that the farm was operating at a loss appears inconsistent as well with husband's request that he be awarded the farm and the fact that wife quit teaching in order to reduce household income in 1975. Moreover, as wife points out, the tax return claims deductions for depreciation, long and short term capital loss carryovers and capital gain deductions of $100,645, which yields a positive cash flow of $89,000 in 1978. It is not clear how many of these deductions will be available over the next few years, and the evidence provides no basis for concluding that the farm will lose money every year.

Husband also fails to adequately address the question of whether he can satisfy some or all of his obligations from the other assets he received, such as the real property and commodity accounts which total $58,000. Husband also received canning company retains valued at $110,000. Husband testified that this sum represents capital reserves withheld each year from a farmer's gross deliveries which are paid out over a period of ten years. There is no evidence of the saleability of this asset or whether it could be

---

[9] Under the decree, husband would have to pay during the first three years the following: (a) $18,000 per year spousal support ($54,000); (b) $25,000 for wife's attorney fees; (c) his own attorney fees; (d) $31,000 still owed on a combine; (e) the $18,000 judgment on the commodities account; and (f) an indeterminate sum in income taxes and capital gains.

borrowed against. Riverside Farm is encumbered by a mortgage of $360,000. Husband testified that the farm was not sufficient collateral for further loans. There was no expert opinion to corroborate that statement and, given the $1,000,000 net value of the farm, we are reluctant to reach a similar conclusion.

Finally, there is no evidence of substance as to the value of the right to plant Penncross seed and whether such a right could be sold.

Undoubtedly, the decree places a heavy financial burden on husband and, in order to meet that burden, he may be required to take steps which he might otherwise have avoided. In this respect, however, he is in the same position as the obligor spouse in many dissolutions where the courts attempt to divide the assets of one household to support two. On the record before us, we see no reason to alter the decree.

## SPOUSAL SUPPORT AND ATTORNEY FEES

After this case was submitted and while this appeal was pending, husband died. On January 19, 1981, wife moved this court for an order adding husband's personal representative as a party to this proceeding and augmenting the record to show husband's death on December 19, 1980. By order dated February 6, 1981, wife's motion was allowed. ORS 107.115(3).

■ ■ In consideration of the total property division, we conclude that the award of spousal support decreed by the trial court was proper. However, in view of husband's death, his liability for such support was terminated by operation of law as of the date of his death. *Prime v. Prime,* 172 Or 34, 139 P2d 550 (1943). Accordingly, husband's estate is chargeable for such support accruing between the date of the trial court's decree and the date of his decease, and presently remaining unpaid.

■ As to the matter of attorney fees, wife was awarded $25,000 toward her attorney fees. Husband objects that wife has sufficient assets to require her to pay her own attorney fees. This overlooks the fact that husband got the long half of the assets. In the context of this case we consider that the award of attorney fees by the trial court

was appropriate. *Frishkoff and Frishkoff,* 45 Or App 1033, 610 P2d 831 (1980); *Kathrens and Kathrens, supra.*

Affirmed. No costs to either party.