# In the Matter of the Marriage of

## MESSERLE,
*Appellant,*
*and*
## MESSERLE,
*Respondent.*

## (No. 80-1759, CA A21221)

643 P2d 1286

Roger B. Todd, North Bend, argued the cause for appellant. With him on the brief was Flaxel, Todd & Nylander, North Bend.

Guy A. Stokes, Coos Bay, argued the cause for respondent. With him on the brief was Chandler & Stokes, Coos Bay.

Before Gillette, Presiding Judge, Joseph, Chief Judge, and Roberts, Judge Pro Tempore.

JOSEPH, C. J.

### JOSEPH, C. J.

Wife appeals a dissolution decree, contending that the trial court did not make an equitable distribution of husband's interests in the family corporation and that the award of child support was insufficient. We modify in part and remand for further proceedings.

The parties, in their early thirties, were married for twelve and one-half years. They have two children, who were 9 and 10 years old at the time of the hearing. Husband is employed by, and is the secretary-treasurer of, Fred Messerle & Sons, Inc., a closely held family corporation involved in raising beef and selling timber. The corporation has 1,001 shares of common stock outstanding. Husband and his three brothers each own 250 shares of the voting common stock; one share is owned by husband's father. Husband also owns 648 shares of the preferred stock.

The corporate by-laws require that each voting shareholder live on corporate property. The corporation contributed $50,000 to the cost of each shareholder's house and has an interest in it for that amount. The parties' house has an assessed value of $81,300 but is insured for $112,000. The corporation also supplies necessities to each shareholder and his family. It pays the taxes and utilities for each home, provides each shareholder and his wife an automobile, gives each family its beef requirement and provides medical insurance. Husband also receives a monthly gross salary of $1,200, with a net of approximately $900.

At the time of trial, wife and the children had left the family home. She had returned the car supplied by the corporation and had purchased another for $6,600, which she borrowed from her father.

The trial court awarded wife all of the marital assets in her possession, including antiques, almost $16,000 in savings accounts and $2,700 in cash. Husband was awarded possession of, and the parties' interest in, the family home.

The dispute centers around the division of husband's corporate interests. The only evidence of value was

presented by husband. According to the balance sheet he prepared for 1979, the corporation had a net worth of $2,562,586.[1] The book value of the common stock was $1,672 per share, and the stated value of the preferred stock was $100 per share. Thus, according to husband's figures, the book value of his common stock was approximately $418,103, and his preferred shares had a total stated value of $64,800.

The trial court found that the stated value of the preferred stock was its actual value:

"* * * [I]t can be inferred from the evidence that the corporation has consistently used that value for its preferred shares; therefore, the court finds that the true value of the 648 shares of preferred stock owned by husband is $64,800.00."

Husband claimed that the present value of his common stock was only $6,165, because the stock is actually intended to be enjoyed in his retirement and, according to the corporate by-laws, is redeemable only on his death or retirement.[2] Nevertheless, the shares are transferrable, subject to the restriction that the board of directors be given the first right of refusal to purchase them.

Wife claims that the shares should be valued at book value and that she is presently entitled to one-half of that value, or $209,051.49. The trial court found that wife is entitled to receive that amount only *at the time of husband's retirement.*

"Husband's interest is $418,102.98 which is 24.975% of the net worth of the corporation * * *. Wife would be entitled to one-half of this which is $209,051.49. By stating that wife is entitled to this amount it does not necessarily mean that she should receive that amount immediately.

---

[1] Husband prepared a comparative balance sheet for the years 1978 and 1979. The year in question was 1980. However, husband testified that he felt that the balance sheet for 1980 would not be substantially different from the balance sheet in evidence. Wife does not challenge that.

[2] Husband based the present value of his "retirement" interest on the assumption that when he retired he would enter a contract with the corporation similar to one entered into between an older relative and the corporation. He assumed he would enter a 15-year contract at 11 percent in 2010 with an annual payment of $69,811. Discounting the total amount due under the contract at a rate of 15 percent produces, according to his calculations, a 1980 present value of $6,165.

This amount reflects husband's non-vested, non-matured retirement right. Since wife's interest is derived from husband, she can have no greater right than husband. This means that she would not be entitled to this amount until husband retired."

He found husband's shares of common stock presently to be worth $100,000.

The court awarded wife all of the preferred shares, giving husband the first right of refusal should she want to sell them. He ordered that the common stock be placed in trust for the benefit of both parties, with the voting rights in husband. Under the decree, husband may terminate the trust and acquire the preferred stock by paying wife $82,400 (one-half of the stated value of the preferred stock and one-half of the "current" $100,000 value of the common stock) within five years from the date of the decree. If, after five years, he has not terminated the trust in this manner, wife would be free to dispose of the preferred stock, and the trust would continue until husband retires or the parties jointly agree to sell the stock, at which time wife is entitled to receive $241,451.49,[3] less any proceeds she may have received from a sale of the preferred stock.[4] Husband would then pay the amount in 120 monthly installments of $2,012. When the payments were completed, wife would transfer any unsold preferred shares to husband. He is to be responsible for any taxes attributable to the transfer of shares.

The trial court's valuation of the common stock is puzzling. He rejected wife's claim that it was currently worth the book value of $418,103 and husband's claim that

---

[3] This figure is one-half of the stated value of the preferred stock, $32,400, plus one-half of the book value of the common stock, $209,051.49. It ignores the $19,100 "personal housing account" on the corporate books in husband's name. Properly calculated, the amount is $251,001.50.

[4] The trial court decreed that

"Petitioner and Respondent shall equally share any decrease in the value of the preferred and common stock of Fred Messerle & Sons, Inc., due to economic conditions, but in no event shall Petitioner's interest be reduced below the amount Husband is to receive."

Thus, if one-half of the selling price (if the stock is sold) or the book value (if the stock is not sold) were less than $241,451.49, presumably wife would be entitled to the smaller amount. The effect of the provision is not directly before us on appeal.

it was presently worth only $6,165, but found instead that it was worth $100,000, which is apparently nothing other than a compromise figure with no basis in the record. He also found that the 1980 book value is what husband will receive on *retirement* several years hence and that wife would then be entitled to one-half of that amount if husband did not buy out her interest earlier.[5]

Under the decree, it is unlikely that wife will receive anything from the corporate interests for nearly 30 years, because the corporation is closely held, the shares are not readily marketable and husband's interest is intended to be realized only upon his retirement. This is particularly inequitable given that the parties' home — ordinarily a major asset of a marriage — is partially owned by the corporation and has been awarded to husband. Moreover, the decree can hardly be said to disentangle the financial affairs of the parties. *See Price and Price,* 43 Or App 1029, 607 P2d 756 (1979).

■     We acknowledge the shortcomings of valuing stock in a closely held corporation at book value,[6] but neither party put on any other evidence as to its present fair market value. Moreover, both parties seem willing to assume that the present book value is the proper measure. Wife claims the present book value is the present value of husband's interest. He claims it is only the basis of his retirement interest. However, there was no evidence, other than his testimony, that this is the case. He also testified that the redemption value is solely within the control of the board of directors. Because the only reliable evidence presented was the book value of the common stock and the stated value of the preferred stock, we adopt those values as the current values of husband's interests.[7] *See Kennedy and Kennedy,* 51 Or App 15, 21, 625 P2d 654 (1981), and

---

[5] The court, on one hand, stated that wife had no right to husband's "retirement interest" until he retired. Yet, on the other hand, it stated that she is currently entitled to $82,400 or one-half of the current value of husband's "retirement interest."

[6] *See* Comment, *Valuation of Close Corporate Shares in Oregon,* 57 Or L Rev 309 (1978).

[7] To which we will add the value of the "personal housing account." *See* n 3, *supra.*

*Halvorsen and Halvorsen,* 46 Or App 25, 29, 610 P2d 307 (1980).

■   For reasons which do not appear in the record, the parties chose to try this case without the benefit of any expert witnesses, even though the principal bone of contention was the valuation of a one-quarter interest in a successful going concern worth at least $2 1/2 million.[8] As a result, the trial judge was left practically to his own devices, substantially unaided. We are, of course, in the same position. Were this a case involving credibility, or one where the trial court merely reached a conclusion with which we disagree, we might well just leave matters where they are. *See Frishkoff and Frishkoff,* 45 Or App 1033, 610 P2d 831 (1980); *Pullen and Pullen,* 38 Or App 137, 589 P2d 1145, *rev den* 286 Or 449 (1979). This is, however, a case in which the trial court made a division that is not "just and proper in all the circumstances," ORS 107.105(e), and we can make a division that is significantly preferable.

■   The decree ignores the economic realities. What we see is a successful, prosperous corporate business set up in such a way as to maximize economic advantage to its owners and minimize the personal tax aspects of prosperity. Husband, with his brothers, controls every aspect of the organization, including a retained surplus of about $1 1/2 million. His cash income from the company is merely a pale and false image of his actual economic situation. The decree, although allocating to wife all of the cash assets, gave husband the family home (worth more than the cash assets by a factor of three) and, effectively, the total control over, and by any calculation far more than half of, the long and short term benefits of the income producing assets. Her enjoyment of any benefits from their pre-dissolution assets, over and above the cash, would be largely in husband's family's control and could effectively be delayed for 30 years or more. We will not permit that to stand.

Paragraphs 1, 2 and 3 of the portion of the decree captioned PROPERTY DIVISION are affirmed. Paragraphs 4 and 5 are stricken, and in lieu thereof are substituted the following:

_____
[8] The *only* witnesses were husband and wife.

"4. Respondent is awarded all of the preferred and common stock of Fred Messerle & Sons, Inc., standing in his name on the 27th day of May, 1981, as his sole and separate property; subject, however, to a lien in favor of appellant on each and every share and all of the shares in the aggregate amount of $251,002, which lien shall bear interest from May 27, 1981, at the rate of 9 percent per annum, simple interest, and shall be paid at the rate of not less than $2,095.85 per month for 120 months, beginning on the first day of the third full month following the effective date of the decision; the first payment shall have added to it accrued interest from May 27, 1981, and each 12th payment thereafter shall have added to it the accrued interest since the last payment of interest.

"5. Respondent shall not permit, cause or allow any sale, transfer or encumbrance of any of the stock awarded to him without the express written consent of petitioner or the court unless and until 75 percent of the lien amount plus accrued interest has been paid and then only upon the furnishing of such security for the payment of the balance then owing, plus interest to accrue, as shall satisfy the court.

"6. Any and all taxes which may become due by reason of the property division in this decree shall be the sole responsibility of respondent, except with respect to property included in paragraph 1 of this division of the decree, which shall be the sole responsibility of petitioner."

■ The portion of the decree captioned CHILD CUSTODY is affirmed. The portion of the decree captioned CHILD SUPPORT is affirmed, except as to the amount of monthly support per child, and the matter is. remanded to the trial court for reconsideration under *Smith v. Smith,* 290 Or 675, 626 P2d 342 (1981), in the light of the modified property division.

Decree affirmed as to child custody; decree affirmed as to child support, except for the monthly amount thereof, which is remanded to the trial court for reconsideration; decree affirmed with respect to paragraphs 1, 2 and 3 of the property division and modified by striking paragraphs 4 and 5 and substituting new paragraphs 4, 5 and 6, awarding husband all of the preferred and common stock of the corporation, giving wife a lien thereon, providing for payment of the lien and making other provisions, all as set forth in this opinion. Costs to appellant.