Argued and submitted September 13, 1984, affirmed as modified September 25, reconsideration denied November 8, petition for review denied December 10, 1985
(300 Or 367)

In the Matter of the Marriage of

OLINGER,
*Appellant,*
*and*

OLINGER,
*Respondent.*

(D8205-69303; CA A30625)

707 P2d 64

Timothy N. Brittle, Portland, argued the cause for appellant. With him on the brief was Acker, Underwood & Smith, Portland.

Mark McCulloch, Portland, argued the cause for respondent. With him on the brief was Powers & McCulloch, Portland.

Before Buttler, Presiding Judge, and Warden and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

In this dissolution proceeding, wife appeals, contending that the property division is not just and proper, that the amount of the judgment in her favor for lost job opportunity was not properly calculated and that she should have been awarded spousal support and attorney fees. She also contends that the trial court erred in excluding certain evidence. We modify the property division and affirm in all other respects.

Although the parties were married eight years, they actually lived together for six and one-half years. During the year before the dissolution husband, then 34, received $95,200 in salary and $21,500 in bonuses from three dealerships of which he is part owner. One of the dealerships also maintained a boat for his personal use. Wife's income during that year, from her present position as a bookkeeper and office manager in an auto dealership, was $21,000. She was 35 at the time of dissolution and has two children from two previous marriages.

Most of the parties' assets consisted of husband's stock in the three dealerships. Husband acquired Olinger Travel Homes before the marriage with financial assistance from his parents. He owns 52 percent of the stock of that corporation; the remainder is held by his parents. Olinger Dodge reflects the same division of ownership, but husband purchased his stock during the marriage with $25,000 taken from husband's and wife's joint bank account and a $79,000 loan from Olinger Travel Homes. Husband also owns 25 percent of Olinger Chrysler-Plymouth, acquired during the marriage with a $27,500 loan from Olinger Travel Homes. Each of the three dealerships has increased in value during the marriage.

Wife worked in each of the dealerships at various times. She received a salary for most of her work and contributed that salary, which amounted to $16,700 in the last full year before the parties separated, to their joint account. That account was the source, not only of $25,000 for the down payment on Olinger Dodge, but also of part of the down payment for the parties' home and of about $10,000 later spent on home improvements.

The trial court awarded the home, with a stipulated equity of $35,300, to wife, along with personal property in her

possession worth between $6,000 and $7,500; it also gave wife a judgment, not at issue here, for $11,000 for a job opportunity lost during the marriage. Husband was awarded his stock in the three dealerships and personal property in his possession worth between $5,000 and $8,500. The trial court reached this division by valuing husband's interest in Olinger Dodge at $46,300 and concluding that the parties should share approximately equally in the home and that dealership, but that husband's interests in Olinger Travel Homes and Olinger Chrysler-Plymouth were not marital assets subject to division in the dissolution. Wife contends that, because two of the dealerships were acquired during the marriage and the third appreciated greatly during the marriage, she should share in all three.

■ Even in short-term marriages each spouse is entitled to share in property that was acquired or increased in value during the marriage. ORS 107.105(1)(f). *See Card and Card,* 60 Or App 117, 652 P2d 866 (1982); *Peru and Ovenburg,* 56 Or App 300, 641 P2d 646, *rev den* 293 Or 146 (1982); *Sagner and Sagner,* 49 Or App 215, 619 P2d 660 (1980), *rev den* 290 Or 302 (1981); *York and York,* 30 Or App 937, 569 P2d 32 (1977). Furthermore, this eight-year marriage cannot be characterized as short-term, even if allowance is made for the separation. A review of Oregon cases involving marriages lasting at least five but less than nine years reveals a reluctance to characterize such marriages as either long-term or short-term. *Seefeld and Seefeld,* 294 Or 345, 349 n 2, 657 P2d 201 (1982); *Caverly and Caverly,* 65 Or App 98, 670 P2d 199, *rev den* 296 Or 236 (1983); *Gerlitz and Gerlitz,* 50 Or App 443, 623 P2d 1088, *rev den* 290 Or 853 (1981); *Frishkoff and Frishkoff,* 45 Or App 1033, 610 P2d 831 (1980); *Mauser and Mauser,* 28 Or App 525, 559 P2d 1310 (1977). In cases that distinguish between property brought to the marriage and property acquired or appreciated during the marriage, the wife has been awarded at least half of acquisitions and increases, even when the husband was the source of all or nearly all of the parties' assets at the beginning of the marriage. *Seefeld and Seefeld, supra; Caverly and Caverly, supra; Gerlitz and Gerlitz, supra; Frishkoff and Frishkoff, supra.*

The conclusion that wife should share in property accumulated during this marriage is supported by the fact that the parties commingled their financial affairs and by the

statutory presumption that a homemaker spouse contributes equally to the parties' financial success. *Jenks and Jenks,* 294 Or 236, 242, 656 P2d 286 (1982); ORS 107.105(1)(f). The parties clearly commingled their financial affairs. Both contributed to the down payment on the family home, to the home improvements and to the down payment on Olinger Dodge. Wife did the majority of the house work and half the yard work and also contributed her full-time earnings to the joint account. The trial court found that wife's employment rebutted the statutory presumption of equal contribution by a homemaker, and that finding affected the property division. We believe, to the contrary, that the presumption is strengthened when a spouse not only does the homemaking but also contributes his or her salary to the marital estate. Wife's participation in the family businesses, which at times was unpaid, on weekends or on an emergency troubleshooting basis, further strengthens the presumption of equal contribution and our finding that the family affairs were integrated. *See Coats and Coats,* 64 Or App 594, 597, 669 P2d 370 (1983).

Husband contends that the presumption of equal contribution is overcome, because Olinger Travel Homes, which he brought to the marriage, was the source of funds used to acquire the other dealerships and because his salary from those dealerships was the major source of funds in the joint account. Although courts may consider the source of funds belonging to one party if they remain segregated,[1] unsegregated funds will not be traced to their ultimate source in the absence of a compelling reason to do so. The fact that husband's salary came in part from a dealership which he owned before the marriage does not lessen the fact that it was family income. Neither does the fact that husband, because of his business success, contributed a greater share to the joint account make it necessary to ascribe to him a greater share of assets purchased from that account. *Coats and Coats, supra.*

Thus the presumption of equal contribution to the marital assets applies, even though stock in the dealerships was held in husband's name. ORS 107.105(1)(f). The presumption of equal contribution is further. strengthened by

---

[1] *Jenks and Jenks, supra; Pierson and Pierson,* 294 Or 117, 653 P2d 1258 (1982); *Frishkoff and Frishkoff, supra; Pullen and Pullen,* 38 Or App 137, 589 P2d 1145, *rev den* 286 Or 449 (1979).

Olinger Travel Homes' policy of retaining a significant portion of its earnings. Those funds, which otherwise would have been income to the marriage, provided the source for loans used to acquire Olinger Dodge and Olinger Chrysler-Plymouth. Husband also testified that he reinvested his bonuses, which otherwise would have been available as marital income, in the dealerships.

We conclude that the increase in value of Olinger Travel Homes during the marriage and the entire value of Olinger Chrysler-Plymouth, acquired during the marriage, should be included as marital assets in addition to Olinger Dodge. The questions of the value of those assets and of how they should be divided remain. The trial court accepted husband's expert's valuation of the dealerships, based on the book value of their assets, a method that might be used by a prospective purchaser. However, there is no indication that husband intends to sell the dealerships, and neither the decision of the trial court nor our modification would necessitate their sale. Husband's expert also deducted for capital gains tax, which is inappropriate when no sale is planned. *Clapperton and Clapperton,* 58 Or App 577, 581, 649 P2d 620 (1982).

Wife's expert evaluated the dealerships based on the income they generated, taking into account the difference in value between a majority and a minority interest.[2] In doing so, he followed the valuation rules adopted by the Internal Revenue Service. As one might expect, each expert used a method that was more favorable to his client. The fair market value is most likely somewhere between the two, but the income approach is more realistic if the businesses are to be viewed, as we think they should be, as going concerns.[3]

Wife's expert valued husband's 52 percent interest in Olinger Travel Homes at $416,000 at the time of dissolution, and at $82,000 at the beginning of the marriage, an appreciation during the marriage of $334,000. Although husband's

---

[2] *Reiling and Reiling,* 66 Or App 284, 291, 673 P2d 1360 (1983), *rev den* 296 Or 536 (1984); *Belt and Belt,* 65 Or App 606, 610, 672 P2d 1205 (1983), *mod on other grounds,* 68 Or App 42, 680 P2d 390 (1984).

[3] *See Messerle and Messerle,* 57 Or App 15, 20, 643 P2d 1286, *rev den* 293 Or 340 (1982); *Browning and Browning,* 28 Or App 563, 566, 559 P2d 1314 (1977); *Comment,* "Valuation of Close Corporation Shares in Oregon," 57 Or L Rev 309, 314 (1978).

expert proposed quite different values for both dates, his figures yield a similar appreciation if the capital gains tax is not deducted.[4] The trial court, in arriving at a value for Olinger Dodge, took husband's expert's figure at the date of separation, which included a deduction for capital gains tax, and then subtracted the entire amount of the unpaid loan from Olinger Travel Homes, even though part of that loan is attributable to Olinger Chrysler-Plymouth.[5] We value interests at the date of dissolution, unless there has been a long period of separation and mutual financial independence. *Pierson and Pierson, supra,* 294 Or at 119; *Lemke and Lemke,* 289 Or 145, 148, 611 P2d 295 (1980); *see also Dietz and Dietz,* 271 Or 445, 533 P2d 783 (1975); *Clapperton and Clapperton, supra; Annot.,* 34 ALR4th 63 (1984). The experts' valuations of Olinger Dodge on that date, before deducting the loan and without deducting for capital gains tax, are practically identical. Taking wife's expert's valuation of $135,200,[6] less $47,100, the portion of the unpaid loan from Olinger Travel Homes attributable to Olinger Dodge, we find that Olinger Dodge was worth $88,100 at the date of dissolution.

Wife's expert valued the 25 percent interest in Olinger Chrysler-Plymouth at $70,000.[7] Subtracting the $16,400 share of the unpaid loan from Olinger Travel Homes gives a value of $53,600. Thus the total marital assets subject to division (exclusive of the personal property awarded each) are the home, the increase in value of Travel Homes, and the two auto dealerships, totalling $511,000.

We perceive no compelling reason why wife should not be awarded one-half of the marital assets. Those assets have been reduced by $11,000 by virtue of the judgment awarded her by the trial court for reasons unrelated to the division of assets, leaving $500,000 to be divided. Husband should retain his stock in the dealerships and wife's interest should be represented by a judgment, with payments which will not be likely to force husband to sell his stock in any of the

---

[4] Husband's expert's opinion resulted in an appreciation of $325,000.

[5] The trial court's computation of the net value of husband's interest in this asset was in error, as husband conceded at oral argument.

[6] Husband's expert's valuation was $136,723.

[7] Husband's expert attributed very little to goodwill of Olinger Chrysler-Plymouth and valued husband's interest at $58,600.

dealerships. Wife has been awarded the equity in the home, agreed to be $35,300. She is entitled to a judgment for $214,700 bearing interest at 9 percent per annum, to be paid at not less than $2,500 per month, including interest, beginning one month from the date this decision becomes final.

■ ■ Husband's award includes all of the income-producing assets of the parties. Our modification will enable wife to acquire income-producing property and to supplement her salary to achieve a standard of living not overly disproportionate to that enjoyed during the marriage, without requiring husband to relinquish his source of income. In view of the result we reach and of wife's full-time employment,[8] the trial court's decision not to award spousal support is affirmed. The amount of property divided between the parties is a major consideration in determining whether spousal support should be awarded, especially if the purpose of that property is to provide income. *Grove and Grove,* 280 Or 341, 344, 571 P2d 477 (1977); *Caverly and Caverly, supra,* 65 Or App at 101.

■ ■ It was within the trial court's discretion to decline to award attorney fees in addition to the fees and costs husband was ordered to pay during the pendency of the dissolution proceedings. *Haguewood and Haguewood,* 292 Or 197, 214, 638 P2d 1135 (1981). We also agree with the trial court that any award for the lost job opportunity after the parties separated would be speculative.

■ Wife contends that the trial court erred in excluding testimony about the health of her children, because it was relevant to the issue of wife's expenses. Although that testimony should have been received, ORS 107.105(1)(c)(G), other evidence of wife's medical expenses was received, and we have substantially modified the property division.

Judgment modified to add a judgment in favor of wife for $214,700, bearing 9 percent interest, payable at not less than $2,500 a month, including interest, beginning 30 days from the date this opinion becomes final; affirmed as modified. Costs to wife.

---

[8] Wife does not assert a need for retraining.