Argued and submitted April 7, remanded in part; otherwise affirmed
October 11, 1995, petition for review denied January 30, 1996 (322 Or 598)

In the Matter of the Marriage of

Michelle M. DAY,
*Appellant,*
*and*

John V. DAY,
*Respondent.*

(92-04346CV; CA A84569)

904 P2d 171

Samuel A. Ramirez argued the cause and filed the briefs for appellant.

Douglas Osborne argued the cause for respondent. With him on the brief was Jean E. Baron.

Before Warren, Presiding Judge, and Landau and Armstrong, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Wife appeals from a dissolution judgment, contending that the trial court erred in its distribution of the parties' property and in its award of spousal support and attorney fees. We review *de novo*, ORS 19.125(3), and modify the judgment solely with respect to the property distribution.

The parties began living together in June 1984, and were married in California on May 4, 1985. During the early years of the marriage, both parties held jobs, but husband's work as an engineer was the primary source of family income. Wife worked at a yarn store purchased by the parties, which proved unprofitable and was closed. Wife stopped working outside the home in January 1990, and has remained unemployed since that time.

In June 1990, husband received an inheritance of approximately $500,000. He quit his job as an engineer shortly thereafter. He used $200,000 of the inheritance to pay off the mortgage on the family home in Scotts Valley, California. The remainder of the inheritance was placed in stocks. In November 1990, husband began to manage full time the stock portfolio that contained the proceeds of his inheritance. Since then, the parties' source of income has been the principal and earnings from the stock.

In August 1992, husband moved to Klamath Falls and purchased a house. Wife and the parties' two minor children joined him there.

The parties separated in December 1992. Husband traveled to California where he filed for separation. Wife remained in Oregon where she filed for separation. Wife filed a petition for dissolution in November 1993. After appropriate proceedings to resolve which state had jurisdiction, the Oregon court proceeded to determine the issues in the dissolution.

The trial court considered California law in making the property distribution. The effect of that was to reimburse husband for the $200,000 from his inheritance that was used to pay off the Scotts Valley mortgage.[1] The trial court then

---

[1] The trial court concluded that husband's inheritance is separate property under California Family Code § 770, which provides, in part:

divided the remainder of the parties' property, including the stock portfolio, approximately equally, with the Klamath Falls house going to wife, and the Scotts Valley house going to husband. The court's distribution was based on the finding that

> "[wife] is not in a position to begin earning a viable living. She has been absent from the work force for a longer period than [husband], and has custody of two small children. [Husband] would have substantial assets to begin a new life, and would be debt free."

Under the distribution, wife's post-dissolution assets are worth approximately $167,100, and husband's post-dissolution assets are worth approximately $332,263.

Wife contends that the trial court erred by reimbursing husband for the $200,000 from his inheritance that was used to pay off the mortgage on the Scotts Valley house. Wife also assigns error to the amount and duration of spousal support, and to the denial of her request for additional attorney fees. We write only to address the property division.

Wife does not contest the characterization of husband's inheritance as his separate property, nor that $200,000 of the equity in the Scotts Valley house was acquired using husband's inheritance. Rather, wife assigns

---

"(a) Separate property of a married person includes all of the following:

"\* \* \* \* \*

"(2) All property acquired by the person after marriage by gift, bequest, devise or descent."

The trial court then applied California Family Code § 2640, which recognizes the right of a party making a separate-property contribution to the acquisition of real property to be reimbursed on dissolution for that contribution, to the extent the contribution can be traced. Specifically, California Family Code § 2640 provides:

"(a) 'Contributions to the acquisition of the property,' as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of the loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property.

"(b) In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of the property to the extent the party traces the contributions to a separate property source. The amount reimbursed shall be without interest or adjustment for change in monetary values and shall not exceed the net value of the property at the time of the division."

error to the trial court's application of California law to the distribution of the equity in the Scotts Valley house, which resulted in $200,000 of that equity being carved out of the marital estate.

■     ORS 107.105 provides, in part:

"(1)    Whenever the court grants a decree of marital annulment, dissolution or separation, it has power further to decree as follows:

"* * * * *

"(f)    For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * The court shall consider the contribution of a spouse as a homemaker as a contribution to the acquisition of marital assets. There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

The term "the real or personal property, or both, of either or both of the parties," describes all of the property that is within the dispositional authority of the court in a dissolution. *Stice and Stice*, 308 Or 316, 324, 779 P2d 1020 (1989). ORS 107.105(1)(f) also uses the term "marital assets," which describes any real or personal property, or both, acquired by either of the spouses, or both, during the marriage. *Stice*, 308 Or at 325. Marital assets, a subset of the total property over which the court has dispositional authority, are subject to a statutory rebuttable presumption of equal contribution. ORS 107.105(1)(f); *Stice*, 308 Or at 325. That presumption may be overcome by a finding that the property was acquired by one spouse uninfluenced directly or indirectly by the other spouse, that is, that the other spouse did not contribute economically or otherwise to the acquisition of the property. *Stice*, 308 Or at 325-26.

■     In this case, because the Scotts Valley house was acquired during the marriage, it is a marital asset, subject to the presumption of equal contribution. Husband argues, however, that the trial court correctly applied California law to distribute the equity in the Scotts Valley house, because the property at issue is real property, and the law of the situs of such property should apply to resolve any issue about it.

■ That argument might have force if the California law at issue dealt with the ownership of the property, because, in appropriate cases, the law of the situs can be used to determine the ownership of such property. *See, e.g., Jacobs v. Jacobs*, 82 Or App 333, 336, 728 P2d 89 (1986). However, the California law at issue does not address the ownership of the Scotts Valley house. Rather, it determines how the equity in the house should be distributed on dissolution. *See* Cal Fam Code § 2640 (1994). In an Oregon dissolution case, that issue is governed by Oregon law, specifically ORS 107.105(1)(f), and not by California law. Hence, the trial court erred in applying California law and carving out a portion of the equity in the house from the marital estate. Having determined that Oregon's statutory presumption of equal contribution applies to the Scotts Valley house, we turn to whether husband rebutted that presumption.

■ In determining whether the presumption has been overcome with respect to a particular asset, we may consider that the source of funds used to acquire the asset belonged to one spouse, if those funds remain segregated. *Olinger and Olinger*, 75 Or App 351, 355, 707 P2d 64, *rev den* 300 Or 367 (1985). Unsegregated funds will not be traced to their ultimate source, however, unless there is a compelling reason to do so. *Id.*; *Langan and Langan*, 89 Or App 320, 323, 748 P2d 1035, *rev den* 305 Or 433 (1988).

For example, in *Olinger*, we held that the statutory presumption of equal contribution was not rebutted with respect to two automobile dealerships acquired during the marriage, despite the fact that the source of the funds used to acquire those dealerships was property that the husband had owned before the marriage. 75 Or App at 355. Likewise, in *Frank and Frank*, 86 Or App 727, 730-31, 740 P2d 240 (1987), we held that the statutory presumption of equal contribution was not rebutted with respect to the spouses' home, despite the fact that a large portion of the equity in the home was acquired using proceeds from the sale of assets owned by the wife before the marriage.

In each of those cases, commingling of the spouses' funds weighed in favor of applying the presumption of equal

contribution.[2] *Olinger*, 75 Or App at 353-56; *Frank*, 86 Or App at 730-31. That also was the case in *Langan*, where there was no distinction among husband's properties, which were used for family income. 89 Or App at 323.

■      In this case, the Scotts Valley house has a total equity of $300,000, $200,000 of which was acquired using husband's inheritance. The fact that husband's inheritance was the source of funds used to obtain a portion of the equity in the house, without more, does not rebut the presumption of equal contribution by both parties to the acquisition of that house. Furthermore, the extent to which the parties' commingled their funds weighs in favor of applying the presumption.

Husband testified that he used a portion of his inheritance to pay off the mortgage on the Scotts Valley house so that he would be able to stop paying the monthly mortgage:

"I did it as an investment. It was an easy way to stop paying an $1,800 mortgage bill every month * * *. My mortgage each year was costing me $24,000. I took $200,000 of my inheritance, paid off the mortgage and I was essentially earning $24,000 a year."

That is the type of commingling of assets the Supreme Court described in *Jenks and Jenks*, 294 Or 236, 242, 656 P2d 286 (1982):

"Acquisitions are made, [foregone] or replaced for the good of the family unit rather than for the financial interests of

---

[2] For example, in *Olinger*, we said:

"The presumption of equal contribution is further strengthened by Olinger Travel Homes' [property owned by husband prior to the marriage] policy of retaining a significant portion of its earnings. Those funds, which otherwise would have been income to the marriage, provided the source of loans used to acquire [the two dealerships acquired during the marriage]. Husband also testified that he reinvested his bonuses, which otherwise would have been available as marital income, in the [new] dealerships."

75 Or App at 355-56. In finding that the wife did not rebut the presumption in *Frank*, we said:

"Here, the parties commingled their financial affairs. * * * Although wife bases the value of the real property that she contributed on the net proceeds of $91,000 from their sale, the proceeds also reflect a substantial contribution by husband. Moreover, wife did not attempt to segregate the proceeds. The parties commingled them with other funds and invested in real property * * *. The parties paid mortgage payments and other property expenses out of their joint bank account."

86 Or App at 730-31.

either spouse. Property is bought, sold, enhanced, diminished, intermixed and used without regard to ease of division upon termination of marriage. * * *

"* * * With each common financial decision, * * * the finances of the parties may become more interrelated, and extrication upon dissolution becomes increasingly difficult. The origin of each item becomes less significant in the overall task of making a property division which is 'just and proper in all the circumstances.' "

In this case, the contribution from husband's inheritance allowed the parties to stop making monthly mortgage payments and to put to other family needs and desires the interest and principal from the stock portfolio. Husband gives no compelling reason to treat the proceeds of the inheritance as segregated for the purpose of distribution. *Cf. Langan*, 89 Or App at 323 (exclusive control of asset not a compelling reason to treat assets as segregated). Husband has not rebutted the presumption of equal contribution with regard to the Scotts Valley house.[3]

■　　　We now turn to distribution of the marital estate. ORS 107.105(1)(f) requires courts to distribute the spouses' property, including separate property, "as may be just and proper in all the circumstances." *Stice*, 308 Or at 326. Among the goals we may seek to achieve in dividing property in a dissolution proceeding are to enable the parties to preserve assets and to begin post-marital life with a degree of economic self-sufficiency. *See Pierson and Pierson*, 294 Or 117, 124, 653 P2d 1258 (1982); *Bushell and Bushell*, 122 Or App 43, 47-48, 857 P2d 174 (1993).

■　　　It will be necessary for both parties to re-enter the employment market because their investments no longer can support them.[4] Husband's earning capacity, on re-entering the employment market as an engineer, is approximately $4,166 per month. Wife's earning capacity is approximately

---

[3] The trial court divided the remainder of the proceeds of husband's inheritance, that is, the parties' stock portfolio, equally. Husband does not argue here that the presumption of equal contribution has been rebutted with regard to those proceeds.

[4] At the time of the separation, the stock portfolio's value was approximately $142,200, and at the time of the dissolution judgment, its value was approximately $50,000.

$823 per month, which may be impaired while she attends school to obtain a bachelor's degree in business, a course of study she was pursuing at the time of separation. Of the parties' two houses, the Klamath Falls house has a $75,000 mortgage, with monthly payments of $895. The Scotts Valley house is owned free and clear and has an attached apartment that rents for $600 per month.

To enable the parties to preserve assets and to begin post-marital life with some degree of economic self-sufficiency, we award the Scotts Valley house to wife. We award to husband the Klamath Falls house, the entire stock portfolio and the tax credit of $15,000. To equalize the distribution, we also award to husband a $65,000 judgment against wife, payable in four years.[5] The $65,000 judgment shall be secured by a lien on the Scotts Valley house, the form of which shall be determined by the trial court. The remainder of the marital property is to be distributed in accordance with the disposition of the trial court.

Remanded for entry of modified judgment consistent with this opinion; otherwise affirmed. Costs to wife.

---

[5] Under that distribution, wife's post-dissolution assets will have a net value of approximately $249,600 and husband's post-dissolution assets will have a net value of approximately $249,763.